CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
JONATAN SON HERNANDEZ, MIGUEL
VASQUEZ, and KEITA IKEBE, *individually*
*and on behalf of others similarly situated,*

                              *Plaintiffs*,

                 -against-

HUEGAR LLC (D/B/A SILVER RICE),
HIDEKI KATO, and YOHEI MIZUKAWA
(AKA SONNY),

                          *Defendants.*

-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Jonatan Son Hernandez, Miguel Vasquez, and Keita Ikebe, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, CSM Legal, P.C., upon their knowledge and belief, and as against Huegar LLC (d/b/a Silver Rice), ("Defendant Corporation"), Hideki Kato and Yohei Mizukawa (aka Sonny), ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

**NATURE OF ACTION**

1.     Plaintiffs are former employees of Defendants Huegar LLC (d/b/a Silver Rice), Hideki Kato, and Yohei Mizukawa (aka Sonny).

2.     Defendants own, operate, or control two Japanese restaurants, located at 638 Park Place, Brooklyn, NY 11238 ("Park Place location") and at 575A Flatbush Avenue, Brooklyn, NY 11225 ("Flatbush Avenue location") under the name "Silver Rice."

3.      Upon information and belief, individual Defendants Hideki Kato and Yohei Mizukawa (aka Sonny), serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs were employed as a cook, delivery workers, and food preparers at the restaurants located at 638 Park Place, Brooklyn, NY 11238, and at 575A Flatbush Avenue, Brooklyn, NY 11225.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing food, taking out trash, washing dishes, carrying boxes, stocking deliveries, and cleaning the refrigerator and basement (hereafter the "non-tipped duties").

6.      In addition, at all relevant times, Defendants compensated Plaintiffs on a bi-weekly basis.

7.      Despite being employed as delivery workers and food preparers, Defendants failed to properly pay Plaintiffs their wages within the next seven days after the end of the week in which these wages were earned.

8.      In this regard, Defendants have failed to provide timely wages to Plaintiffs.

9.      At all times relevant to this Complaint, Plaintiffs worked for Defendants without appropriate minimum wage, overtime, and/or spread of hours compensation for the hours that they worked.

10.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium, if any.

11.     Further, Defendants failed to pay Plaintiff Son the required "spread of hours" pay for any day in which he had to work over 10 hours a day.

12.     Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

13.     Regardless, at all relevant times, Defendants paid Plaintiffs below the minimum wage and at a rate that was lower than the required tip-credit rate.

14.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

15.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

16.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

17.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

18.     Defendants maintained a policy and practice of requiring Plaintiff Son and Plaintiff Vasquez, and other employees, to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

19. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

20. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

22. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two Japanese restaurants located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

23. Plaintiff Jonatan Son Hernandez ("Plaintiff Son" or "Mr. Son") is an adult individual residing in Kings County, New York.

24.     Plaintiff Son was employed by Defendants at Silver Rice from approximately June 2016 until on or about February 2020.

25.     Plaintiff Miguel Vasquez ("Plaintiff Vasquez" or "Mr. Vasquez") is an adult individual residing in Kings County, New York.

26.     Plaintiff Vasquez was employed by Defendants at Silver Rice from approximately February 2018 until on or about September 2019.

27.     Plaintiff Keita Ikebe ("Plaintiff Ikebe" or "Mr. Ikebe") is an adult individual residing in Japan.

28.     Plaintiff Ikebe was employed by Defendants at Silver Rice from approximately 2015 until on or about November 2021.

*Defendants*

29.     At all relevant times, Defendants own, operate, or control two Japanese restaurants, located at 638 Park Place, Brooklyn, NY 11238 (the "Park Place Location") and 575A Flatbush Avenue, Brooklyn, NY 11225 (the "Flatbush Avenue Location"), under the name "Silver Rice."

30.     Upon information and belief, Huegar LLC (d/b/a Silver Rice) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its service of process office at 236 5th Avenue, Room 423, New York, NY, 10001.

31.     Defendant Hideki Kato is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Hideki Kato is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Hideki Kato possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages

and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.     Defendant Yohei Mizukawa (aka Sonny) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Yohei Mizukawa (aka Sonny) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Yohei Mizukawa (aka Sonny) possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

33.     Defendants operate two Japanese restaurants located in in Brooklyn, New York.

34.     Individual Defendants, Hideki Kato, and Yohei Mizukawa (aka Sonny), possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

35.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

36.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

37.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

38.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

39.     Upon information and belief, Individual Defendants Hideki Kato and Yohei Mizukawa (aka Sonny) operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

40.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

41.     In each year from 2016 to 2021, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

42.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

43.     Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

44.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

45.     At all relevant times, over twenty-five percent of Plaintiffs' duties were physical tasks, including but not limited to: (1) delivery work; (2) preparing food; (3) washing dishes; and (4) cleaning the restaurant.

46.     At all relevant times, despite regularly spending more than twenty-five percent of their shifts performing these physical tasks, Plaintiffs were compensated by Defendants on a bi-weekly basis.

*Plaintiff Jonatan Son Hernandez*

47.     Plaintiff Son was employed by Defendants from approximately June 2016 until on or about February 2020.

48.     Defendants employed Plaintiff Son as a food preparer and ostensibly as a delivery worker.

49.     Although Plaintiff Son was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

50.     Plaintiff Son regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

51.     Plaintiff Son's work duties required neither discretion nor independent judgment.

52.     Throughout his employment with Defendants, Plaintiff Son regularly worked in excess of 40 hours per week.

53.     From approximately June 2016 until on or about December 2017, Plaintiff Son worked for defendants at the Park Place Location and the Flatbush Avenue Location 6 days a week. More specifically, he worked at the Flatbush Avenue Location from approximately 10:00 a.m. until on or about 4:00 p.m., 4 days a week and from approximately 10:00 a.m. until on or about 4:30 p.m., 2 days a week. He worked at the Park Place Location from approximately 5:00 p.m. until on or about 10:00 p.m., 4 days a week and from approximately 5:00 p.m. until on or about 10:30 p.m. to 11:00 p.m. 2 days per week. In addition, Plaintiff Son spent approximately 15 minutes per workday traveling between both locations (for a total of approximately 69.5 to 70.5 hours per week of work and travel time).

54.     From approximately January 2018 until on or about February 2020, Plaintiff Son worked at the Park Place Location from approximately 10:00 a.m. until on or about 10:00 p.m.,

Sundays through Wednesdays and from approximately 10:00 a.m. until on or about 10:30 p.m. to 11:00 p.m., Fridays and Saturdays (typically 70 to 71 hours per week).

55.    However, Plaintiff Son missed approximately 1 to 2 weeks of work in early 2019 due to an accident.

56.    Throughout his employment, Defendants paid Plaintiff Son his wages in cash.

57.    From approximately June 2016 until on or about September 2018, Defendants paid Plaintiff Son $9.00 per hour for his hours from 10:00 a.m. to 4:00 p.m. and $7.00 per hour for his hours from 5:00 p.m. until 10:00 p.m.

58.    From approximately September 2018 until on or about December 2018, Defendants paid Plaintiff Son $10.00 per hour for his hours from 10:00 a.m. to 4:00 p.m. and $8.00 per hour for his hours from 5:00 p.m. to 10:00 p.m.

59.    From approximately January 2019 until on or about February 2020, Defendants paid Plaintiff Son $11.00 per hour for his hours from 10:00 a.m. to 4:00 p.m. and $8.00 per hour for his hours from 5:00 p.m. to 10:00 p.m.

60.    Throughout his employment, Plaintiff Son was not paid for any work or travel time that occurred between the hours of 4:00 p.m. and 5:00 p.m. In addition, he was not paid for any work he performed after 10:00 p.m.

61.    Although Defendants granted Plaintiff Son one-hour breaks, his breaks were frequently reduced by 30 to 45 minutes and he was not compensated for the time that he worked during these breaks.

62.    Plaintiff Son was never notified by Defendants that his tips were being included as an offset for wages.

63.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Son's wages.

64.     Upon information and belief, Defendants withheld a portion of Plaintiff Son's tips; specifically, and upon information and belief, Defendants pocketed approximately 15% of his Grubhub tips.

65.     Prior to approximately 2017, Plaintiff Son was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

66.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Son regarding overtime and wages under the FLSA and NYLL.

67.     Defendants did not provide Plaintiff Son an accurate statement of wages, as required by NYLL 195(3).

68.     Defendants did not give any notice to Plaintiff Son, in English and in Spanish (Plaintiff Son's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

69.     Defendants required Plaintiff Son to purchase "tools of the trade" with his own funds—including 2 bicycles and bicycle maintenance expenses.

*Plaintiff Miguel Vasquez*

70.     Plaintiff Vasquez was employed by Defendants from approximately February 2018 until on or about September 2019.

71.     Defendants employed Plaintiff Vasquez as a food preparer and ostensibly as a delivery worker.

72.     Although Plaintiff Vasquez was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

73.     Plaintiff Vasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

74.     Plaintiff Vasquez's work duties required neither discretion nor independent judgment.

75.     At all relevant times, Plaintiff Vasquez regularly worked in excess of 40 hours per week.

76.     During the month of February 2018, Plaintiff Vasquez worked at the Park Place Location and the Flatbush Avenue Location from approximately 5:00 p.m. until on or about 10:30 p.m., 3 days a week (typically 16.5 hours per week).

77.     From approximately March 2018 until on or about June 2018, Plaintiff Vasquez worked at the Park Place Location and the Flatbush Avenue Location from approximately 5:00 p.m. until on or about 10:30 p.m., 4 to 5 days per week and from approximately 5:00 p.m. until on or about 11:00 p.m. 2 days per week (typically 34 to 39.5 hours per week hours per week).

78.     From approximately July 2018 until on or about August 2018, Plaintiff Vasquez worked at the Park Place Location and the Flatbush Avenue Location from approximately 1:00 p.m. until on or about 10:30 p.m., Tuesdays and Thursdays, from approximately 5:00 p.m. until on or about 10:30 p.m., Wednesdays, from approximately 5:00 p.m. until on or about 11:00 p.m., Fridays, and from approximately 1:00 p.m. until on or about 11:00 p.m., Saturdays (typically 39 hours per week).

79.     During the month of October 2018, Plaintiff Vasquez worked at the Park Place Location and the Flatbush Avenue Location from approximately 5:00 p.m. until on or about 10:30

p.m., 3 days per week and from approximately 5:00 p.m. until on or about 11:00 p.m. 2 days per week (typically 28.5 hours per week).

80.     From approximately November 2018 until on or about September 2019, Plaintiff Vasquez worked at the Park Place Location and the Flatbush Avenue Location from approximately 1:00 p.m. until on or about 10:30 p.m., Tuesdays, Thursdays, and Sundays, from approximately 5:00 p.m. until on or about 10:30 p.m., Wednesdays, from approximately 5:00 p.m. until on or about 11:00 p.m., Fridays, and from approximately 1:00 p.m. until on or about 11:00 p.m., Saturdays (typically 48 hours per week).

81.     From approximately February 2018 until on or about June 2018, Defendants paid Plaintiff Vasquez his wages in cash.

82.     From approximately July 2018 until on or about September 2019, Defendants paid Plaintiff Vasquez his wages by personal check.

83.     From approximately February 2018 until on or about June 2018, Defendants paid Plaintiff Vasquez $8.00 per hour.

84.     From approximately July 2018 until on or about September 2019, Defendants paid Plaintiff Vasquez $12.00 per hour for his hours from 1:00 p.m. to 4:00 p.m. and $11.00 per hour for his hours from 5:00 p.m. to 10:30 p.m.

85.     Plaintiff Vasquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

86.     For example, Defendants required Plaintiff Vasquez to work an additional 30 minutes past his scheduled departure time regularly, and did not pay him for the additional time he worked.

87. Although Defendants granted Plaintiff Vasquez one-hour breaks between 4:00 p.m. and 5:00 p.m., his breaks were frequently cut by 30 minutes and he was not compensated for the work he performed during this time.

88. Plaintiff Vasquez was never notified by Defendants that his tips were being included as an offset for wages.

89. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vasquez's wages.

90. Upon information and belief, Defendants withheld a portion of Plaintiff Vasquez's tips; specifically, and upon information and belief, Defendants pocketed approximately 15% of his Grubhub tips.

91. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vasquez regarding overtime and wages under the FLSA and NYLL.

92. Defendants did not provide Plaintiff Vasquez an accurate statement of wages, as required by NYLL 195(3).

93. Defendants did not give any notice to Plaintiff Vasquez, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

94. Defendants required Plaintiff Vasquez to purchase "tools of the trade" with his own funds—including an electric bike and lock.

*Plaintiff Keita Ikebe*

95. Plaintiff Ikebe was employed by Defendants from approximately 2015 until on or about November 2021.

96.     Defendants employed Plaintiff Ikebe as a cook, food preparer, and ostensibly as a delivery worker.

97.     Although Plaintiff Ikebe was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

98.     Plaintiff Ikebe regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

99.     Plaintiff Ikebe's work duties required neither discretion nor independent judgment.

100.    From approximately June 2016 until on or about March 2020, Plaintiff Ikebe worked at the Park Place Location and the Flatbush Avenue Location from approximately 1:00 p.m. until on or about 11:00 p.m. 1 day per week, from approximately 4:00 p.m. until on or about 11:00 p.m. 1 day per week, from approximately 1:00 p.m. until on or about 10:30 pm 2 days per week, and from approximately 4:00 p.m. to 10:30 p.m. 1 day per week. (typically 39.5 hours per week)

101.    From approximately June 2020 until on or about November 2021, Plaintiff Ikebe worked at the Park Place Location and the Flatbush Avenue Location from approximately 12:00 p.m. until on or about 9:00 p.m., 4 days per week (typically 36 hours per week).

102.    From approximately June 2016 until on or about March 2020, Defendants paid Plaintiff Ikebe his wages in cash.

103.    From approximately October 2020 until on or about November 2021, Defendants paid Plaintiff Ikebe his wages by direct deposit.

104.    From approximately June 2016 until on or about March 2020, Defendants paid Plaintiff Ikebe $10.00 per hour.

105.    From approximately October 2020 until on or about November 2021, Defendants paid Plaintiff Ikebe $15.00 per hour.

106.     From approximately May 2020 until on or about September 2020, Defendants did not pay Plaintiff Ikebe any wages for his work. During this time period, Plaintiff Ikebe was only paid in tips.

107.     From approximately June 2016 until on or about March 2020, Plaintiff Ikebe's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

108.     Specifically, from approximately June 2016 until on or about March 2020, Defendants required Plaintiff Ikebe to work an additional 30 minutes past his scheduled departure time regularly, and did not pay him for the additional time he worked.

109.     Defendants granted Plaintiff Ikebe one-hour breaks between 4:00 p.m. and 5:00 p.m. when his shifts started prior to 4:00 p.m.

110.     Plaintiff Ikebe was never notified by Defendants that his tips were being included as an offset for wages.

111.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ikebe's wages.

112.     Upon information and belief, Defendants withheld a portion of Plaintiff Ikebe's tips; specifically, and upon information and belief, Defendants pocketed approximately 15% of his Grubhub tips.

113.     Prior to approximately 2017, Plaintiff Ikebe was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

114.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ikebe regarding overtime and wages under the FLSA and NYLL.

115.     Defendants did not provide Plaintiff Ikebe an accurate statement of wages, as required by NYLL 195(3).

116.     Defendants did not give any notice to Plaintiff Ikebe, in English and in Japanese (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

117.     Defendants required Plaintiff Ikebe to purchase "tools of the trade" with his own funds—including an electric bike.

*Defendants' General Employment Practices*

118.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in without paying them appropriate minimum wage, as required by federal and state laws.

119.     Moreover, Defendants maintained a policy and practice of requiring Plaintiff Son and Plaintiff Vasquez (and all similarly situated employees) to work in excess of 40 hours a week, at different times throughout their employment, without paying them appropriate overtime compensation as required by federal and state laws.

120.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Son (and all similarly situated employees) to work without paying him appropriate spread of hours pay on days in which he worked more than 10 hours, as required by federal and state laws.

121.     Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

122.     Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

123.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

124.     Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

125.     These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

126.      The Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

127.     These Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

128.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

129.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

130.    In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

131.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

132.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

133.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

134.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

135.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

136.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

137.     Defendants paid Plaintiffs their wages in cash, personal check, and by direct deposit.

138.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

139.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

140.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

141.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

142.     Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

143.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage,

including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

144.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

145.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

146.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### (VIOLATION OF THE TIMELY PAYMENT PROVISIONS
### OF THE NEW YORK LABOR LAW)

147.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

148.    The timely payment of wages provisions NYLL § 191 and its supporting

regulations apply to Defendants and protect Plaintiffs.

149.    Defendants failed to pay Plaintiffs on a timely basis as required by NYLL $\S$ 191(l)(a).

150.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants: (1) the amount of their untimely paid wages as liquidated damages; (2) reasonable attorneys' fees and costs; and (3) pre-judgment and post-judgment interest as provided for by NYLL $\S$ 198.


## SECOND CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

151.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

152.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

153.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

154.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

155.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

156. Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

157. Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

158. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiff Son and Plaintiff Vasquez (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

160. Defendants' failure to pay Plaintiff Son and Plaintiff Vasquez (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

161. Plaintiff Son and Plaintiff Vasquez (and the FLSA Class members) were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

162. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

163. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

164. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

165.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

166.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

167.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

168.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Son and Plaintiff Vasquez overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

169.     Defendants' failure to pay Plaintiff Son and Plaintiff Vasquez overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

170.     Plaintiff Son and Plaintiff Vasquez were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

171.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

172.     Defendants failed to pay Plaintiff Son one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Son's spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

173.     Defendants' failure to pay Plaintiff Son an additional hour's pay for each day Plaintiff Son's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

174.     Plaintiff Son was damaged in an amount to be determined at trial.

<b><u>SEVENTH CAUSE OF ACTION</u></b>

<b>VIOLATION OF THE NOTICE AND RECORDKEEPING</b>

<b>REQUIREMENTS OF THE NEW YORK LABOR LAW</b>

175.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

176.     Defendants failed to provide Plaintiffs with a written notice, in English and in Plaintiffs' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

177.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

<b><u>EIGHTH CAUSE OF ACTION</u></b>

<b>VIOLATION OF THE WAGE STATEMENT PROVISIONS</b>

<b>OF THE NEW YORK LABOR LAW</b>

178.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

179.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

180.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## NINTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

181.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

182.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

183.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

184.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

185.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

186.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities

received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

187.    Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

188.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

189.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of wages shown to be untimely, as well as reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest pursuant to NYLL $\S\S$ 191(l)(a), 198;

(b)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(c)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff Son and Plaintiff Vasquez and the FLSA Class members;

(e)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(f)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(g)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(h)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(i)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Son and Plaintiff Vasquez;

(k)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiff Son;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiff Son;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, as applicable, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

July 13, 2022

CSM LEGAL, P.C

By:       <u>/s/ Catalina Sojo, Esq.</u>

Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# CSM Legal, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

May 20, 2022

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Miguel Vasquez

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:

Date / Fecha:              20 de Mayo 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                                              Telephone: (212) 317-1200
New York, New York 10165                                                             Facsimile: (212) 317-1620

catalina@csmlegal.com

July 12, 2022

BY HAND

TO:      Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jonatan Son Hernandez

Legal Representative / Abogado:        CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                          12 de julio 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                                         Telephone: (212) 317-1200
New York, New York 10165                                                         Facsimile: (212) 317-1620

catalina@csmlegal.com

June 14, 2022

BY HAND

TO:      Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.

Name :                               Keita Ikebe

Legal Representative:

                                         CSM Legal, P.C.

Signature:

Date:                               June 14, 2022

*Certified as a minority-owned business in the State of New York*